IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| NICKLAUS E. GRANT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 115-157 |
| | ) | (Formerly CR 113-129) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at the Federal Correctional Institution in Edgefield, South Carolina, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** Petitioner's motion to amend (doc. no. 8) be **DENIED** as untimely and moot, the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.  BACKGROUND

### A.  Pretrial Proceedings

In an indictment returned on June 10, 2013, a grand jury in the Southern District of Georgia charged Petitioner with one count of felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924, and one count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). United States v. Grant, CR 113-129, doc. no. 1 (S.D. Ga. June 10, 2013) (hereinafter "CR 113-129"). The Court

appointed attorney Andrew Marshall Magruder to represent Petitioner. Id., doc. no. 25. After the Court ruled on various pre-trial motions, the case proceeded to trial. Id., doc. nos. 33, 34.

**B.     Trial**

After jury selection but before opening arguments, Judge Dudley H. Bowen, Jr. admitted the parties' stipulation that Petitioner was a convicted felon and the firearms listed in the indictment traveled in interstate commerce. Id., doc. no. 72 (Trial Tr.), p. 22.

### 1.     Opening Statements

After Judge Bowen gave the jury some preliminary instructions, Assistant United States Attorney ("AUSA") Lamont Belk gave the opening statement for the government. Trail Tr. 23-28. Mr. Belk reviewed the indictment and its importance, as well as the witness and physical evidence the jury would hear. Id. 23-26. He then outlined the government's evidence. Id. at 26-27.

Mr. Magruder also gave an opening statement outlining the case from Petitioner's perspective. Id. at 28. He specifically outlined Petitioner's marital difficulties with his ex-wife Mrs. Wendy Grant, and noted they both had keys and access to the safe. Id. at 29-30. He stated the evidence showed Mrs. Grant "picked a fight" with Petitioner over dinner and was "picking at him, nagging at him, trying to aggravate [him]." Id. at 30. He also pointed out that Mrs. Grant supposedly got rid of the only gun Petitioner had knowledge of before the date of the incident. Id. at 31.

### 2.     The Government's Evidence

The government offered the following evidence at trial. On March 14, 2013 at around 6:15 p.m., Officer Robert Steppe of the Richmond County Sheriff's Office ("RCSO") was

2

dispatched to a domestic disturbance involving a firearm at 3440 Gebhardt Court in Augusta, Georgia. Id. at 38. Upon arrival, Officer Steppe found Petitioner's wife, Wendy Grant, along with Petitioner and a third party, who were loading boxes and personal items into a white Lincoln Navigator. Id. at 38-39, 54. Mrs. Grant was visibly upset. Id. at 38

Officer Steppe called for backup, and ten minutes later, three other officers arrived on the scene. Id. at 39, 65. Based on information from Mrs. Grant, the officers learned there were firearms in the Navigator. Id. at 54. At first, Petitioner refused to give the officers permission to search the vehicle. Id. at 40. However, Officer Steppe contacted an investigator from RSCO who discovered the vehicle was registered to both Petitioner and Mrs. Grant, and Mrs. Grant gave the officers permission to search the vehicle. Id. at 40-41.

Once Mrs. Grant gave approval for a search of the Navigator, Petitioner told the officers there were firearms in a safe inside a shoebox sitting in the rear passenger side of the vehicle. Id. at 41. Petitioner gave the officers the key to the safe, in which they found two revolvers, one semiautomatic handgun, one magazine, and loose rounds of ammunition. Id. at 42. One of the weapons had an obliterated serial number, and another was stolen in Richmond County. Id. at 45-46, 68-69. After confirming Petitioner was a convicted felon, Officer Steppe arrested him. Id. at 50, 52-53.

The government also published to the jury an incriminating jail call Petitioner made from his jail cell later that night. Id. at 72-83. Regarding his arrest, Petitioner stated the following on the call:

> They got three pistols, [expletive], they only charged me with one, so [expletive] it, let that [expletive] ride. . . . I got all them guns in there. [Expletive], I'm trying to figure out how to beat this one. I don't think I have enough money to beat all three of them.

3

(Doc. no. 5, p. 3); see also CR 113-129, Gov't Trial Exhs. 2A (jail call recording); 2B (transcript).

### 3. Petitioner's Evidence

Petitioner testified on his own behalf. Trial Tr. 83-105. He recounted his marriage to Mrs. Grant, including two separations and their divorce on August 2, 2013. Id. at 84. In December 2012, after one of their separations, they reconciled and moved back in together. Id. at 84-85. They jointly purchased a safe in order for Petitioner to keep his money. Id. at 85. Both Petitioner and Mrs. Grant had a key to the safe. Id. at 86.

In January 2013, Petitioner saw his stepson with a little black revolver. Id. at 95. Petitioner instructed Mrs. Grant to dispose of the weapon as he could not be around weapons as a convicted felon. Id. Mrs. Grant supposedly drove away with the gun and disposed of it. Id. at 96.

On March 14, 2013, Petitioner arrived home from work and got into a disagreement with Mrs. Grant because Petitioner did not bring any food home. Id. at 88, 91. Because of this disagreement, Petitioner, with Mrs. Grant's help, began packing his white Lincoln Navigator with the intention of leaving. Id. at 92-93. Mrs. Grant helped him move clothes, shoe boxes, and hampers from the house into the Navigator. Id. Petitioner did not recall who moved the Wolverine shoebox and the safe into the Navigator. Id. at 93.

At some point during this packing, RCSO officers arrived and questioned Petitioner about possession of any weapons. Id. at 93-95. Petitioner told them about the gun his stepson had and that was found in the safe. Id. at 95.

Petitioner admitted to making the jail call published to the jury, but said he was "trying to explain that they charging me for one gun, but now they're saying I have three guns." Id. at 97.

Agent Ronald Rhodes from the Bureau of Alcohol, Tobacco, and Firearms also testified for the defense. Id. at 105-110. Agent Rhodes testified that he found two fingerprints on one of the guns, but could not match either to Petitioner or Mrs. Grant. Id. at 107-08. Agent Rhodes found no other prints on any of the weapons. Id. at 109.

### 4. Closing Arguments and Oral Motion for Judgment of Acquittal

In closing, the government argued the jail call was an admission by Petitioner that he possessed the guns. Id. at 116-123. Mr. Belk also argued no one testified who would corroborate Petitioner's testimony, including Mrs. Grant and his other friends who were there. Id. at 131-32. Finally, he argued Petitioner did not make the jail call out of despair, but instead was mad because he got caught with guns. Id. at 133-34.

Mr. Magruder argued in closing Petitioner did not knowingly possess the handguns. Id. at 124. He argued Mrs. Grant also had access to the safe, and she and Petitioner had a rocky, troubled marriage. Id. at 124-25. He pointed out it was Mrs. Grant who notified police guns were in the vehicle and the safe, and she did not seem distressed on the 911 call. Id. at 125-26. Finally, Mr. Magruder argued there were no fingerprints on the gun, and Petitioner's statements in the jail call were merely expressions of despair rather than admissions of guilt. Id. at 127-30.

Before the jury retired, Mr. Magruder orally moved for a judgment of acquittal based on the insufficiency of the evidence, which the Court denied. Id. at 111-12.

### 5. Verdict and Written Motion for Judgment of Acquittal

The jury convicted Petitioner on both counts. Id. at 153. After the verdict, Mr. Magruder filed a written motion for acquittal and new trial on the ground of insufficient evidence, Judge Bowen denied the motion, finding the evidence "amply" supported the guilty verdict. CR 113-129, doc. nos. 54, 58.

### C. Sentencing

The United States Probation Office prepared the Presentence Investigation Report (PSI), which provided for a Total Offense level of twenty-six and a Criminal History Category of III. PSI ¶¶ 20, 57. Petitioner did not file any objections to the PSI, and the Court adopted the PSI as its findings of fact. See PSI Add.; CR 113-129, doc. no. 70, pp. 15-16.) On March 5, 2014, Judge Bowen sentenced Petitioner to sixty-eight months of imprisonment. CR 113-129, doc. nos. 60, 61, 62, 70.

### D. Appeal

On appeal, Petitioner argued the evidence was insufficient to convict him and his sentence was unreasonable. (Doc. no. 5, Ex. A, Pet'r's App. Br.) The Eleventh Circuit affirmed the conviction and sentence. United States v. Grant, 592 F. App'x 831 (11th Cir. 2015).

### E. § 2255 Motion

Petitioner timely filed the present § 2255 motion on October 5, 2015, asserting Mr. Magruder provided ineffective assistance of counsel in three ways:

(1) failing to investigate the crime charged and the evidence presented at trial;

(2) failing to raise the fact that Petitioner's wife had equal access to the safe; and

(3) failing to clearly explain to the jury that Petitioner was set up by his wife.

(See generally doc. no. 1.)

Nearly a year after filing his §2255 motion, Petitioner filed what he titled "Supplement to Recent § 2255 Motion in Light of Henderson v. U.S. under U.S. v. Little Pursuant to 'Constructive Possession,'" which the Court construed as a motion to amend. (Doc. nos. 8, 9.) In his motion to amend, Petitioner seeks to add the following grounds:

(1) Counsel was ineffective for:
   a) failing to appeal his sentence;
   b) failing to investigate the circumstances surrounding his initial statement to police officers;
   c) failing to communicate with him during trial preparation;
   d) failing to subpoena a witness;
   e) failing to argue what he was actually trying to say on the jail call; and
   f) failing to argue how Mrs. Grant manipulated the system.

(2) The Court's constructive possession instruction to the jury was insufficient under the Supreme Court's decision in Henderson v. United States, __ U.S. __, 135 S. Ct. 1780 (2015).

(3) Petitioner's sentence for his conviction under 18 U.S.C. § 922(g) is invalidated by Johnson v. United States, 135 S. Ct. 2551 (2015).

(Doc. no. 8, pp. 3-12.) The government opposes Petitioner's original motion as meritless, and argues Petitioner's motion to amend should be denied because the majority of Petitioner's claims are untimely and the minority that relate back to his original petition are meritless. (See doc. no. 10.)

## II. DISCUSSION

### A. There is No Need for an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014)

(quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Because Petitioner's claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### B. Petitioner's Motion to Amend Should be Denied as Untimely and Moot.

#### 1. The Majority of Petitioner's New Claims are Untimely.

Petitioner's judgment of conviction was entered on March 7, 2014. CR 113-129, doc. no. 62. However, because Petitioner filed a direct appeal, his one-year statute of limitations runs from ninety days after the Court of Appeals affirmed his sentence. See Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002) ("[E]ven when a prisoner does not petition for certiorari, his conviction does not become 'final' for purposes of § 2255(1) until the expiration of the 90–day period for seeking certiorari.") Here, the Eleventh Circuit affirmed Petitioner's sentence on November 24, 2014, and consequently Petitioner's

8

judgment of conviction became final ninety days later on February 22, 2015. See Grant, 592 F. App'x 831. The instant claims come almost 19 months after that date, well beyond the one year statute of limitations. See 28 U.S.C. § 2255(f).

Petitioner alleges the Tenth Circuit's decision in United States v. Little, 829 F.3d 1177 (10th Cir.), and the Supreme Court's Henderson v. United States, __ U.S. __, 135 S. Ct. 1780 (2015), are new "facts and law" rendering his amendment timely. (See doc. no. 11, p. 2.) However, the Supreme Court has not recognized the rule from those cases as a retroactive right, and therefore they do not implicate 28 U.S.C. § 2255(f)(3)'s later statute of limitation start date. Thus, Petitioner's new claims are only timely if they relate back to his original motion or if he is entitled to tolling of the statute of limitations.

First, Petitioner is not entitled to equitable tolling on his new claims. Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. See Damren v. Florida, 776 F.3d 816, 822 (11th Cir. 2015).

9

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted), *cert. denied*, 133 S. Ct. 351 (2012). As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 133 S. Ct. at 1933 (emphasis added).

Here, Petitioner has not shown that extraordinary circumstances prevented him from timely filing his new claims. Further, Petitioner has not presented any evidence, much less new evidence, to suggest that he did not commit the offenses of which he was convicted such that no reasonable juror would have convicted him. Indeed, Petitioner does not assert innocence of his crime of conviction, but only that his counsel's assistance was ineffective and new case law fails to support the government's constructive possession argument. (See doc. no. 7.) Thus, neither equitable tolling nor the actual innocence exception applies to toll his one-year statute of limitations.

Second, the majority of Petitioner's amended claims do not relate back to his original motion. Under Federal Rule of Civil Procedure 15(c), an amended claim relates back to the date of the original pleading if it "arose out of the conduct, transaction, or occurrence set out or attempted to be set out — in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) is narrow; it does not contemplate the addition of "an entirely new claim based on a different set of facts." Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (citing Pruitt v. United States, 274 F.3d 1315, 1318 (11th Cir. 2001)). Thus, "to relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." Farris, 333 F.3d at 1215 (citing Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000)). As the Eleventh Circuit has explained:

> The key consideration is that the amended claim arises from the same conduct and occurrences upon which the original claim was based. This may be the case even if one or both claims do not explicitly state supporting facts. When the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it. One purpose of an amended claim is to fill in facts missing from the original claim.

Dean v. United States, 278 F.3d 1218, 1222 (11th Cir. 2002). In other words, at issue here is whether the amended claims are merely an attempt to "flesh out" an original claim, or if the amended claims rely upon different facts.

Here, Petitioner's original § 2255 motion gave no indication as to the factual basis of his various ineffective assistance claims in Amended Grounds 1(a), 1(c), 1(d), 1(e). Nor did Petitioner reference any claim based on the "new law" set forth in Henderson. The original motion only claimed that his lawyer failed to investigate the crime charged and failed to adequately explain his wife's involvement. Thus, Petitioner's supplemental claims are

11

entirely new and based on different facts. Further, the fact that Petitioner asserted an ineffective assistance claim as to an unrelated ground in his original motion does not save his new ineffective assistance claim from being untimely. Davenport, 217 F.3d at 1344. Therefore, Petitioner's claims in amended grounds 1(a), 1(c), 1(d), 1(e), and 2 are untimely and the Court will not consider them.

### 2. Amended Grounds 1(b) and 1(f) Arguably Relate Back But Are Meritless and Moot.

Petitioner's Amended Grounds 1(b) and 1(f) arguably relate back to his original claims as they relate to Plaintiff's claims in his original motion that counsel failed to investigate the claims and evidence and failed to adequately explain Mrs. Grant's involvement. However, these new claims lack merit, as discussed *infra*. Thus, Plaintiff's motion to add these claims is moot.

### 3. Johnson Does Not Apply.

Although Petitioner was convicted under 19 U.S.C. § 922(g), he was not sentenced under the statutory provisions of the ACCA, did not receive a career offender enhancement under § 4B.1, and did not receive any other enhancement incorporating a "residual clause" that might make Johnson potentially applicable. Further, Petitioner's crime of conviction was not 18 U.S.C. § 924(c) which also contains a "residual clause," though substantially different from the one involved in Johnson. Because Petitioner was not sentenced under the ACCA or a statute containing a "residual clause," Johnson does not apply to his conviction.

Accordingly, as Petitioner's amended claims are untimely or moot, his motion to amend should be denied.

### C. Petitioner's Ineffective Assistance Claims Are Meritless.

#### 1. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003). Petitioner must show counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

### 2. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground One and Amended Ground 1(b).

Petitioner claims in Ground One and Amended Ground 1(b) that "counsel failed to investigate the crime charged and the evidence that was presented at trial" and "fail[ed] to investigate circumstances of the petitioner's initial verbal statement to (Steppe and Kirkland) the Law Enforcements [sic]. . . ." (Doc. no. 1, p. 14; doc. no. 8, p. 7.) However, Petitioner offers no evidence nor points to anything in the record indicating how counsel's performance was deficient or how any further investigation would have resulted in a different outcome at trial. Therefore, because he cannot point to any evidence satisfying either prong of Strickland, Plaintiff's claims in Ground One and Amended Ground 1(b) fail. See Strickland, 466 U.S. at 688, 694; see also Smith v. United States, No. 8:07-CR-25-T-27MAP, 2010 WL 2613321, at *11 (M.D. Fla. June 29, 2010) ("Petitioner further [f]ails to present any factual

or legal support for his allegations and thus presents no evidence of entitlement to relief.") (citations omitted).

### 3. Petitioner Has Not Shown Entitlement to Relief Based on the Claims in Ground Two, Three, and Amended Ground 1(f).

Petitioner's arguments in Ground Two, Three, and Amended Ground 1(f) all center on evidence regarding his wife. Petitioner contends counsel was ineffective for (1) failing to raise the fact that Petitioner's wife had equal access to the safe; (2) failing to clearly explain to the jury that Petitioner was set up by his wife; and (3) failing to argue his wife manipulated the system to get revenge on Petitioner. (Doc. no. 1, pp. 14-17; doc. no. 8, p. 8.) Petitioner's claims are without merit because they are affirmatively contradicted by the record.

Petitioner's counsel repeatedly argued Petitioner's wife had equal access to the safe and was motivated by ill intentions toward Petitioner. In opening argument, Mr. Magruder pointed out that Mrs. Grant also had a key to the safe and none of Petitioner's fingerprints were ever found on the guns. Trial Tr. 29-32. During Petitioner's direct examination, he educed testimony supporting this contention. Id. at 86-87. Finally, he again presented the equal access argument to the jury in closing. Id. at 125-26.

Mr. Magruder also repeatedly questioned Mrs. Grant's motives throughout the trial. In opening, he pointed out that she brought the firearms to the attention of the police and picked a fight with Petitioner on the night in question. Id. at 29-31. He also procured testimony from Petitioner on direct examination supporting this theory. Id. at 84-97. Finally, he argued Mrs. Grant was "behind this whole thing" during his closing. Id. at 125-

15

127. It is manifestly clear from the record that Mr. Magruder repeatedly brought to the jury's attention Mrs. Grant's equal access to the safe and potentially nefarious motives.

Therefore, because Petitioner's counsel repeatedly pointed out Mrs. Grant's conflicts of interest and access to the guns, Petitioner's claims of ineffective assistance are contrary to fact and meritless.

Accordingly, Petitioner has not demonstrated entitlement to relief on any claim in his motion and it should be denied.

### III. CONCLUSION

For the reasons set forth above, Court **REPORTS** and **RECOMMENDS** Petitioner's motion to amend (doc. no. 8) be **DENIED** as untimely and moot, the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 31st day of July, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA